UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY JOHNSON,

    Plaintiff,

vs.

MICHIGAN BOARD OF STATE
CANVASSERS; JOCELYN BENSON,
in her official capacity as Secretary
of State; and JONATHAN BRATER,
in his official capacity as Director of
the Michigan Bureau of Elections,

    Defendants.

Case No.

Hon.

---

**ESSHAKI LEGAL PLLC**
Eric S. Esshaki
Attorney for Plaintiff
38500 Woodward Ave., Suite 330
Bloomfield Hills, MI 48304
(313) 460-1421
eric@esshakilegal.com

---

**PLAINTIFF'S COMPLAINT FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff, Perry Johnson ("Mr. Johnson"), in his capacity as a candidate for Governor of the State of Michigan seeking the Republican Party's nomination via Michigan's August 2, 2022, primary ballot, through his attorney Eric Esshaki, files this Complaint against Defendants Michigan Board of State Canvassers; Jocelyn Benson, Secretary of State of Michigan; and Jonathan Brater, Director of the

Michigan Bureau of Elections, in their official capacities (collectively "Defendants").

## SUMMARY OF THIS CIVIL ACTION

1. Over the past several months, Mr. Johnson has secured the support of hundreds of thousands of Michigan voters for his run for Governor. He has spent countless hours and money campaigning. All recent relevant polling showed unequivocally that Mr. Johnson was one of the front-runners in the Republican primary race.

2. Mr. Johnson and his campaign have been working diligently over the last couple months collecting petition signatures to gain access to the primary election ballot. In total, Mr. Johnson, through his volunteer team and unaffiliated third-party vendors, collected and filed with the Secretary of State's office 23,193 signatures on or before April 19, 2022.

3. On May 23, 2022, the Secretary of State's Bureau of Elections (the "Bureau") issued its staff reports to candidates. Mr. Johnson's report indicated that, although he had submitted well in excess of the 15,000 required signatures, only 13,800 were facially valid, thus disqualifying him from being placed on the Republican primary election ballot in August 2022.

4. Mr. Johnson's report indicated that a total of 9,393 signatures were deemed invalid. Of those, 6,983 signatures were invalidated because they were

collected by petition circulators alleged to have committed fraud on a massive scale. The remaining 2,410 signatures were invalidated with almost no explanation at all and without disclosing to Mr. Johnson which 2,410 of the 23,193 signatures the BOE was invalidating.

5. Notwithstanding his broad support, Defendants', through secretive processes, deceptive practices, and on nothing more than whims of fraud, drastically changed the Bureau of Elections Procedures ("BOE Procedures") for canvassing petition signatures.

6. Those changes unlawfully permitted the BOE to arbitrarily invalidate 6,983 of Mr. Johnson's signatures as fraudulent without even giving so much as a first glance at 5,580 of those.

7. The unlawful invalidation of those 5,580, along with the 2,410 undisclosed (and allegedly invalid) signatures left Mr. Johnson only 1,200 signatures short of the required 15,000 signature threshold to have his name printed on the ballot.

8. Defendants attempted to justify the changes to the BOE Procedures based on several novel, inconsistent, trivial, and wholly arbitrary data points.

9. They then used those data points as pretext to categorize petition circulators as fraudulent ("Fraudulent Circulators") and proceeded to invalidate

*every* signature those circulators collected by merely spot checking fewer than twenty percent of those signatures.

10. That means that, contrary to Michigan Law, 5,580 signatures were invalidated without anyone from the BOE actually comparing the signature to the Qualified Voter File ("QVF").

11. Defendants' enforcement of the signature requirement in light of the new Bureau Procedures and the alleged unprecedented fraud that occurred is unreasonable and imposes a severe burden on Mr. Johnson's rights by making it impossible for him to have his name placed on the August 2022 primary ballot.

12. Defendants' further violated Mr. Johnson's right to due process of law by failing to give him an opportunity to be heard in a meaningful manner.

13. Accordingly, Mr. Johnson is entitled to the relief sought herein.

## THE PARTIES, JURISDICTION AND VENUE

14. Mr. Johnson is a Michigan resident who seeks to appear as a Republican candidate for the office of Governor on the August 2, 2022, primary ballot.

15. Defendant Michigan Board of State Canvassers is a four-member public body created by the Michigan Constitution of 1963 and by statute. See Const. 1963, Art. 2, § 7, M.C.L. 168.22.

16. Defendant Jocelyn Benson is Michigan's Secretary of State. Secretary Benson is the State's chief elections official and has ultimate authority over the

4

enforcement of the Michigan Election Code, including the provisions challenged herein. Mr. Johnson asserts his claims against Secretary Benson in her official capacity only. Secretary Benson's official address is 430 W. Allegan, Lansing, Michigan 48933.

17. Defendant Jonathan Brater is the Director of the Michigan Bureau of Elections. Director Brater accepts and reviews candidate petition filings, assists county and local election officials with their administrative duties, and administers the State's electoral process and Campaign Finance Act. Mr. Johnson asserts his claims against Director Brater in his official capacity only. Director Brater's official address is Bureau of Elections, 430 W. Allegan, Lansing, Michigan 48933.

18. Venue is proper in this Court because Mr. Johnson is a resident of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. See *Bay County Democratic Party v. Land*, 340 F. Supp.2d 802 (E.D. Mich. 2004). This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan and they are residents of Michigan. This Court is a proper venue for this civil action under 28 U.S.C. § 1391.

19. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Mr. Johnson's claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

20. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

## **GENERAL ALLEGATIONS**

21. The State of Michigan ("Michigan") failed to follow its own election law and standard nominating petition processing standards which resulted in keeping Plaintiff Perry Johnson ("Mr. Johnson") off Michigan's August 2, 2022, Republican gubernatorial primary ballot.

22. Mr. Johnson is a candidate for Governor of the State of Michigan seeking the Republican Party's nomination via Michigan's August 2, 2022, primary ballot.

23. To qualify for the primary ballot, Mr. Johnson needed to submit nominating petitions with 15,000 valid signatures.

24. On or before April 19, 2022, Mr. Johnson submitted his nominating petitions to the Bureau of Elections ("Bureau") with 23,193 signatures and a signed affidavit stating that the signatures were valid and genuine to the best of his information and belief.

25. The Bureau's standard approach to processing nominating petitions has two stages.

26. In stage one, the Bureau's staff reviews every petition sheet for signature and facial compliance with the Michigan Election Law, which includes: checking that the signature header and the circulator certificate are properly completed; that each signature is accompanied by an address, name, and date; and that the City or Township in which the signor resides was in the County written on the signature header.

27. At the conclusion of stage one, the Bureau staff determines how many signatures have been disqualified for facial errors and then calculates the balance of the remaining signatures. If the balance of the remaining signatures are fewer than the total required to qualify, the Bureau will recommend that the Board determine the petitions insufficient. If the candidate has more signatures remaining than the required number to qualify, the Bureau notes the difference ("the cushion").

28. In stage two, Bureau staff then reviews any challenges to the petition's sufficiency. If the number of challenged signatures is larger than the cushion, staff processes the challenge and determines how many of the challenged signatures were invalid. If the number of challenged signatures is not larger than the cushion, staff does not process the challenge because the cushion could not be overcome by the challenge.

29. After reviewing the challenge, if the number of potentially valid signatures remaining on the candidate's nominating petitions falls below the threshold required to be placed on the ballot, Bureau staff recommends that the Board determine

7

the candidate's petitions to be insufficient. If the number of remaining valid signatures is above the threshold required to be placed on the ballot, Bureau staff recommends that the Board certify the candidate's name to the ballot.

30. After facially reviewing the signatures on nominating petitions for all the gubernatorial candidates, including Mr. Johnson's, the Bureau staff identified an alleged signature fraud scheme perpetrated by certain petition circulators and unknown to the candidates.

31. Specifically, the Bureau estimated that 68,000 invalid signatures were submitted across 10 sets of nominating petitions.

32. In an unprecedented deviation from the Bureau's two stage standard approach to processing nominating petitions, the Bureau modified its standard approach by setting aside all the nominating petitions signed by the alleged fraudulent petition circulators.

33. Next, the Bureau conducted a "targeted signature check" of the alleged fraudulent nominating petitions but only compared 7,000 signatures of the estimated 68,000 alleged fraudulent signatures with signature records in the QVF.

34. After completing its "targeted signature check," the Bureau declared that all signatures appearing on all petitions signed by the alleged fraudulent petition circulators were invalid.

35. On May 23, 2022, the Bureau submitted its report to the Board determining that, of the 23,193 nominating petition signatures that Mr. Johnson submitted, only 13,800 signatures were valid because 6,983 were submitted on petitions signed by alleged fraudulent petition circulators, and 2,500 were invalidated for various errors.

36. The Bureau subsequently recommended to the Board that Mr. Johnson's petitions were insufficient because he lacked the required 15,000 valid signatures to be placed on the August 2, 2022, primary ballot.

37. Before the scheduled May 26, 2022, public hearing, Mr. Johnson filed a complaint with the Board objecting to the unprecedented deviation used by the Bureau to invalidate 6,983 alleged fraudulent signatures without comparing each signature to the QVF as required by Michigan law.

38. The Bureau responded to Mr. Johnson's complaint with an affidavit submitted to the Board stating that it compared only 1,405 (approximately 20.1%) of the 6,983 alleged fraudulent signatures to the QVF and that none of the 1,405 signatures were determined to be valid.

39. The Board held its public hearing on May 26, 2022, at which it intended to make a final determination on whether to accept the Bureau's recommendation.

40. At the May 26, 2022, Board public hearing, Bureau Director Jonathan Brater admitted that the Bureau recommended invalidating Mr. Johnson's signatures without checking them against the QVF.

41. And, Director Brater further admitted that Bureau of Elections staff only compared 7,000 of the 68,000 signatures on nominating petitions submitted across all 10 of gubernatorial candidates because according to him, it was "impractical" to compare every signature against the QVF as required by law.

42. Additionally, neither the Bureau of Elections, nor the Board has ever identified which signatures Mr. Johnson submitted on his nominating petitions were invalid as compared to the QVF, if any at all.

43. And because the Bureau hasn't checked all of Mr. Johnson's 6,983 alleged fraudulent signatures against the QVF as required by law, and Mr. Johnson doesn't have access to the QVF, no one knows how many of his disqualified signatures are actually invalid.

44. The Board ultimately deadlocked 2-2 along partisan lines and failed to declare the sufficiency of his complaint.

45. And, upon information and belief, the Secretary of State has not, and will not, certify Mr. Johnson's name as a Republican candidate for the Office of Governor on the August 2, 2022, primary ballot.

46. Despite having a clear legal duty not to do so, the Board invalidated entire petition sheets based on alleged forgeries, in direct violation of M.C.L. 168.554c(6)'s mandate that "The invalidity of 1 or more signatures on a petition does not affect the validity of the remainder of the signatures on the petition," as well as binding judicial precedent.

47. There was no indication that the staff of the Secretary compared any of the signatures on Mr. Johnson's petitions to the QVF before or after applying some unspecified eyeball test to make a determination – and public allegations – of "fraud." To date, there is no indication that the Secretary contacted any individuals who circulated these petitions, no indication that the Secretary contacted any individuals whose information appears on the face of the petitions, or any of the other hallmarks of a traditional government fraud investigation. And, there have been no criminal or civil charges yet brought against any of the individuals who circulated the allegedly fraudulent petitions.

48. The Board further violated Mr. Johnson's right to due process guaranteed under both the United States and Michigan Constitutions by denying him notice of the basis for its determination that signatures on his petitions were invalid, and a meaningful opportunity to respond to its allegations of invalidity, fraud, and forgery.

49. Although it claims that 9,393 signatures on his petitions are invalid, the Bureau has never given Mr. Johnson an itemized list of each of those signatures. Nor has the Bureau given him any explanation for its invalidation other than a general disqualification of each signature gathered by 18 circulators for various and sundry "indicators" of fraud. Instead, the Bureau has only specifically identified 78 of his signatures that may be invalid for jurisdictional reasons or because they are of dubious authenticity. No specific signatures on any petition sheet has yet been identified as forged and presented to Mr. Johnson by the Secretary in compliance with Michigan law.

50. Because the Board violated its clear legal duties by applying the wrong standard, violating the law, acting contrary to binding judicial precedent, ignoring the Secretary's guidance, and violating Mr. Johnson's constitutional rights, it failed to meet its burden of establishing that he had less than 15,000 valid signatures on his nominating petitions.

51. On information and belief, the Secretary will not certify Mr. Johnson's name as a Republican candidate for the Office of Governor of Michigan for the reasons stated above.

52. Ballots for the August 2, 2022, primary must be sent to uniformed personnel and absentee voters on June 18, 2022. Before then, the primary ballots need to be printed and proofed.

53. Given these extreme time constraints a temporary restraining order enjoining the Secretary from proceeding with certifying names for the August 2, 2022, Republican primary ballot without notice to Defendants is proper here because it is the only possible avenue for Mr. Johnson's name to appear on the August 2, 2022, primary ballot. Thus, Mr. Johnson has no other adequate equitable remedy aside from a temporary restraining order.

54. And because the Secretary, on information and belief, will not certify Mr. Johnson for the reasons stated above, a temporary restraining order enjoining the Secretary from immediately finalizing the August 2, 2022, Republican primary ballot is proper here because Mr. Johnson has at least 15,000 valid signatures, thus he is likely to succeed on the merits of his claims, and will he suffer immediate and irreparable harm if the Secretary leaves his name off the August 2, 2022, Republican primary ballot.

55. Additionally, Mr. Johnson can show that because he obtained at least 15,000 valid nominating petition signatures, the balance of equity tips in his favor, so it is in the public interest for his name to be included on the August 2, 2022 Republican primary ballot.

## COUNT I-VIOLATION OF FIRST AND
## FOURTEENTH AMENDMENT RIGHTS
### (M.C.L. §§ 168.53; 168.544(f) are unconstitutional as applied to
### Mr. Johnson as a candidate)

56. Plaintiff incorporates by reference all previous allegations of this Complaint as if fully set forth herein.

57. In light of the alleged unprecedented fraud and the Bureau's unprecedented, unlawful, and after-the-fact deviation in processing the nominating petition signatures in response to that fraud, Defendants' enforcement of M.C.L. §§ 168.53 and 168.544(f) is unconstitutional as applied to Mr. Johnson because Defendants' enforcement of those statutes in combination with the Bureau's new Procedures imposes a severe burden on Mr. Johnson, making it impossible for him to satisfy the statutes' signature requirements to appear on the primary election ballot.

58. The Bureau's hasty implementation of the new canvassing Procedures, which significantly decrease the threshold for invalidating signatures and rely on arbitrary and wholly speculative indicia of fraud to invalidate signatures, impose a severe burden on candidates, like Mr. Johnson.

59. That burden is exacerbated by the fact that Defendants failed to notify the candidates of the new Procedures, and implemented those Procedures after it was too late for Mr. Johnson to compensate for them and submit additional signatures to increase his "cushion."

60. Thus, when these factors are viewed in combination, including the alleged unprecedented fraud that occurred, Defendants' enforcement of statutory signature requirements severely burdens Mr. Johnson.

61. Mr. Johnson will suffer immediate and irreparable harm because Defendants' unconstitutional enforcement of the statutory signature requirements under the circumstances makes it impossible for him to get his name on the August 2, 2022, Republican primary ballot.

62. Under these circumstances, Defendants' application and enforcement of the signature requirements of M.C.L. sections 168.53 and 168.544(f) are burdensome, unreasonable, and are not narrowly tailored to meet any compelling state interest.

63. Therefore, Defendants' continued enforcement of M.C.L. sections 168.53 and 168.544(f) against Mr. Johnson will continue to injure him in the immediate future in the absence of relief from this court.

## COUNT II-VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

64. Plaintiff incorporates by reference all previous allegations of this Complaint as if fully set forth herein.

65. Mr. Johnson has a fundamental right to seek public office and he cannot be deprived of that right without due process of law.

66. Defendants are unlawfully denying Mr. Johnson access to the ballot without providing him with an opportunity to be heard in a meaningful manner.

67. Defendants invalidated 9,393 signatures that Mr. Johnson filed with the Bureau of Elections. Of those, 5,580 were invalidated without the Bureau having first reviewed them. In addition, the Bureau invalidated an additional 2,410 signatures with little to no explanation.

68. The Bureau would not provide Johnson with an itemized list of the 2,332 (out of a total of 23,193) signatures that were invalidated, leaving him left to guess.

69. Thus, without knowing which signatures the BOE was invalidating, Johnson was forced to comb through nearly all 23,193 signatures and then guess as to which of those comprised the 2,332 signatures the BOE invalidated.

70. The only way in which Mr. Johnson could reasonably ensure that his arguments regarding the 2,332 invalidated signatures were heard in a meaningful manner (or at all), was to make arguments that all 23,193 signatures should be deemed valid.

71. That is an insurmountable task with even an unlimited amount of time to prepare. Here, however, Mr. Johnson had three days to prepare.

72. Thus, in addition to withholding from Mr. Johnson the information necessary for him to prepare his case, the time constraints imposed upon him were wholly unreasonable given the magnitude of the task.

73. Both the withholding of vital information and the time constraints effectively robbed Mr. Johnson of any opportunity to be heard in a meaningful manner. That is not due process.

74. Defendants should be enjoined from preventing the placement of Mr. Johnson's name on the ballot until or unless Mr. Johnson has had a meaningful opportunity to be heard. Anything less would deprive Mr. Johnson of his fundamental rights without due process of law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Johnson respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants and grant the following relief:

A. Enter declaratory judgment holding M.C.L. sections 168.53 and 168.544(f) are unconstitutional as applied to Mr. Johnson in his capacity as a candidate for Governor of the State of Michigan seeking the Republican Party's nomination via Michigan's August 2, 2022, primary ballot;

B. Enter a temporary restraining order and/or preliminary injunction, barring Defendants from enforcing the 15,000 signature threshold requirements of M.C.L. sections 168.53 and 168.544(f);

C. Enter an order requiring Defendants to decrease the signature threshold requirements, or place Mr. Johnson's name on the August 2, 2022, Republican primary ballot;

D.     Enter an order requiring the Secretary of State to immediately cease the printing of August 2022 primary ballots until Mr. Johnson's Motion for a Temporary Restraining Order is decided;

E.     Award attorneys' fees pursuant to 42 U.S.C. § 1998, and

F.     Award such other relief as the Court deems just and proper.

Respectfully submitted,

**ESSHAKI LEGAL PLLC**

By: /s/ *Eric S. Esshaki* (P83393)
Eric S. Esshaki
Attorney for Plaintiff
38500 Woodward Ave., Suite 330
Bloomfield Hills, MI 48304
(313) 460-1421
eric@esshakilegal.com