# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

PERRY JOHNSON,

     Plaintiff,

v.

MICHIGAN BOARD OF STATE
CANVASSERS; JOCELYN BENSON
in her official capacity as Secretary of
State; and JONATHAN BRATER, in
his official capacity as Director of the
Michigan Bureau of Elections,

     Defendants.

Case No. 2:22-cv-11232-MAG-JJCG

Hon. Mark A. Goldsmith

Magistrate Judge Jonathan J.C. Grey

---

## PROPOSED INTERVENOR CAROL BRAY'S ANSWER TO COMPLAINT

     Proposed Intervenor Carol Bray submits this Answer to Plaintiff's Complaint and, in support, states as follows:

### SUMMARY OF THIS CIVIL ACTION

1.    Over the past several months, Mr. Johnson has secured the support of hundreds of thousands of Michigan voters for his run for Governor. He has spent countless hours and money campaigning. All recent relevant polling showed unequivocally that Mr. Johnson was one of the front-runners in the Republican primary race.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

2.     Mr. Johnson and his campaign have been working diligently over the last couple months collecting petition signatures to gain access to the primary election ballot. In total, Mr. Johnson, through his volunteer team and unaffiliated third-party vendors, collected and filed with the Secretary of State's office 23,193 signatures on or before April 19, 2022.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

3.     On May 23, 2022, the Secretary of State's Bureau of Elections (the "Bureau") issued its staff reports to candidates. Mr. Johnson's report indicated that, although he had submitted well in excess of the 15,000 required signatures, only 13,800 were facially valid, thus disqualifying him from being placed on the Republican primary election ballot in August 2022.

**RESPONSE: Intervenor states that the Staff Report speaks for itself, and denies the allegations in this paragraph to the extent they are inconsistent with the Staff Report.**

4.     Mr. Johnson's report indicated that a total of 9,393 signatures were deemed invalid. Of those, 6,983 signatures were invalidated because they were collected by petition circulators alleged to have committed fraud on a massive scale. The remaining 2,410 signatures were invalidated with almost no explanation at all and

without disclosing to Mr. Johnson which 2,410 of the 23,193 signatures the BOE was invalidating.

**RESPONSE: Intervenor states that the Staff Report speaks for itself, and denies the allegations in this paragraph to the extent they are inconsistent with the Staff Report.**

5.      Notwithstanding his broad support, Defendants', through secretive processes, deceptive practices, and on nothing more than whims of fraud, drastically changed the Bureau of Elections Procedures ("BOE Procedures") for canvassing petition signatures.

**RESPONSE: Denied as untrue.**

6.      Those changes unlawfully permitted the BOE to arbitrarily invalidate 6,983 of Mr. Johnson's signatures as fraudulent without even giving so much as a first glance at 5,580 of those.

**RESPONSE: Intervenor admits that Mr. Johnson's signatures were invalidated as fraudulent.  Intervenor denies the remaining allegations in this paragraph as untrue.**

7.      The unlawful invalidation of those 5,580, along with the 2,410 undisclosed (and allegedly invalid) signatures left Mr. Johnson only 1,200 signatures short of the required 15,000 signature threshold to have his name printed on the ballot.

**RESPONSE: Intervenor admits that Mr. Johnson's submitted an insufficient amount of valid, non-fraudulent signatures.  Intervenor denies that the invalidation of those signatures was unlawful.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

8.     Defendants attempted to justify the changes to the BOE Procedures based on several novel, inconsistent, trivial, and wholly arbitrary data points.

**RESPONSE: Denied as untrue.**

9.     They then used those data points as pretext to categorize petition circulators as fraudulent ("Fraudulent Circulators") and proceeded to invalidate every signature those circulators collected by merely spot checking fewer than twenty percent of those signatures.

**RESPONSE: Intervenor admits that all signatures submitted by certain petition circulators were invalidated.   Intervenor denies the remaining allegations in this paragraph as untrue.**

10.     That means that, contrary to Michigan Law, 5,580 signatures were invalidated without anyone from the BOE actually comparing the signature to the Qualified Voter File ("QVF").

**RESPONSE: Intervenor admits that all signatures submitted by certain petition circulators were invalidated.   Intervenor denies that doing so was "contrary to Michigan Law."**

11.     Defendants' enforcement of the signature requirement in light of the new Bureau Procedures and the alleged unprecedented fraud that occurred is unreasonable and imposes a severe burden on Mr. Johnson's rights by making it impossible for him to have his name placed on the August 2022 primary ballot.

**RESPONSE: Denied as untrue.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

12.     Defendants' further violated Mr. Johnson's right to due process of law by failing to give him an opportunity to be heard in a meaningful manner.

**RESPONSE: Denied as untrue.**

13.     Accordingly, Mr. Johnson is entitled to the relief sought herein.

**RESPONSE: Denied as untrue.**

## THE PARTIES, JURISDICTION AND VENUE

14.     Mr. Johnson is a Michigan resident who seeks to appear as a Republican candidate for the office of Governor on the August 2, 2022, primary ballot.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

15.     Defendant Michigan Board of State Canvassers is a four-member public body created by the Michigan Constitution of 1963 and by statute. See Const. 1963, Art. 2, § 7, M.C.L. 168.22.

**RESPONSE: Admitted.**

16.     Defendant Jocelyn Benson is Michigan's Secretary of State. Secretary Benson is the State's chief elections official and has ultimate authority over the enforcement of the Michigan Election Code, including the provisions challenged herein. Mr. Johnson asserts his claims against Secretary Benson in her official capacity only. Secretary Benson's official address is 430 W. Allegan, Lansing, Michigan 48933.

**RESPONSE: Admitted.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

17.    Defendant Jonathan Brater is the Director of the Michigan Bureau of Elections. Director Brater accepts and reviews candidate petition filings, assists county and local election officials with their administrative duties, and administers the State's electoral process and Campaign Finance Act. Mr. Johnson asserts his claims against Director Brater in his official capacity only. Director Brater's official address is Bureau of Elections, 430 W. Allegan, Lansing, Michigan 48933.

**RESPONSE: Admitted.**

18.    Venue is proper in this Court because Mr. Johnson is a resident of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. *See Bay County Democratic Party v. Land*, 340 F. Supp.2d 802 (E.D. Mich. 2004). This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan and they are residents of Michigan. This Court is a proper venue for this civil action under 28 U.S.C. § 1391.

**RESPONSE: This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that venue is proper in this Court.**

19.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Mr. Johnson's claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

**RESPONSE: This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that this Court should exercise jurisdiction.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

20.     Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201

and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

**RESPONSE: This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendant states that the above statutes and Rules of Civil Procedure speak for themselves, and denies the allegations in this paragraph to the extent they are inconsistent with those statutes and Rules.**

## GENERAL ALLEGATIONS

21.     The State of Michigan ("Michigan") failed to follow its own election law and

standard nominating petition processing standards which resulted in keeping

Plaintiff Perry Johnson ("Mr. Johnson") off Michigan's August 2, 2022, Republican

gubernatorial primary ballot.

**RESPONSE: This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph as untrue.**

22.     Mr. Johnson is a candidate for Governor of the State of Michigan seeking the

Republican Party's nomination via Michigan's August 2, 2022, primary ballot.

**RESPONSE: Admitted.**

23.     To qualify for the primary ballot, Mr. Johnson needed to submit nominating

petitions with 15,000 valid signatures.

**RESPONSE: Admitted.**

24.     On or before April 19, 2022, Mr. Johnson submitted his nominating petitions

to the Bureau of Elections ("Bureau") with 23,193 signatures and a signed affidavit

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

stating that the signatures were valid and genuine to the best of his information and belief.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

25. The Bureau's standard approach to processing nominating petitions has two stages.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

26. In stage one, the Bureau's staff reviews every petition sheet for signature and facial compliance with the Michigan Election Law, which includes: checking that the signature header and the circulator certificate are properly completed; that each signature is accompanied by an address, name, and date; and that the City or Township in which the signor resides was in the County written on the signature header.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

27. At the conclusion of stage one, the Bureau staff determines how many signatures have been disqualified for facial errors and then calculates the balance of the remaining signatures. If the balance of the remaining signatures are fewer than the total required to qualify, the Bureau will recommend that the Board determine

the petitions insufficient. If the candidate has more signatures remaining than the required number to qualify, the Bureau notes the difference ("the cushion").

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

28.    In stage two, Bureau staff then reviews any challenges to the petition's sufficiency. If the number of challenged signatures is larger than the cushion, staff processes the challenge and determines how many of the challenged signatures were invalid. If the number of challenged signatures is not larger than the cushion, staff does not process the challenge because the cushion could not be overcome by the challenge.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

29.    After reviewing the challenge, if the number of potentially valid signatures remaining on the candidate's nominating petitions falls below the threshold required to be placed on the ballot, Bureau staff recommends that the Board determine the candidate's petitions to be insufficient. If the number of remaining valid signatures is above the threshold required to be placed on the ballot, Bureau staff recommends that the Board certify the candidate's name to the ballot.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

30.    After facially reviewing the signatures on nominating petitions for all the gubernatorial candidates, including Mr. Johnson's, the Bureau staff identified an alleged signature fraud scheme perpetrated by certain petition circulators and unknown to the candidates.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

31.    Specifically, the Bureau estimated that 68,000 invalid signatures were submitted across 10 sets of nominating petitions.

**RESPONSE: Admitted.**

32.    In an unprecedented deviation from the Bureau's two stage standard approach to processing nominating petitions, the Bureau modified its standard approach by setting aside all the nominating petitions signed by the alleged fraudulent petition circulators.

**RESPONSE: Intervenor admits that the Bureau invalidated all nominating petitions signed by the fraudulent petition circulators. Intervenor denies the remaining allegations in this paragraph as untrue.**

33.    Next, the Bureau conducted a "targeted signature check" of the alleged fraudulent nominating petitions but only compared 7,000 signatures of the estimated 68,000 alleged fraudulent signatures with signature records in the QVF.

**RESPONSE: Admitted.**

34.   After completing its "targeted signature check," the Bureau declared that all signatures appearing on all petitions signed by the alleged fraudulent petition circulators were invalid.

**RESPONSE: Admitted.**

35.   On May 23, 2022, the Bureau submitted its report to the Board determining that, of the 23,193 nominating petition signatures that Mr. Johnson submitted, only 13,800 signatures were valid because 6,983 were submitted on petitions signed by alleged fraudulent petition circulators, and 2,500 were invalidated for various errors.

**RESPONSE: Intervenor states that the Staff Report speaks for itself, and denies the allegations in this paragraph to the extent they are inconsistent with the Staff Report.**

36.   The Bureau subsequently recommended to the Board that Mr. Johnson's petitions were insufficient because he lacked the required 15,000 valid signatures to be placed on the August 2, 2022, primary ballot.

**RESPONSE: Admitted.**

37.   Before the scheduled May 26, 2022, public hearing, Mr. Johnson filed a complaint with the Board objecting to the unprecedented deviation used by the Bureau to invalidate 6,983 alleged fraudulent signatures without comparing each signature to the QVF as required by Michigan law.

**RESPONSE: Intervenor states that any complaint filed by Johnson speaks for itself, and denies the allegations in this paragraph as untrue to the extent they are inconsistent with that complaint.**

38.     The Bureau responded to Mr. Johnson's complaint with an affidavit submitted to the Board stating that it compared only 1,405 (approximately 20.1%) of the 6,983 alleged fraudulent signatures to the QVF and that none of the 1,405 signatures were determined to be valid.

**RESPONSE: Intervenor states that the Staff Report speaks for itself, and denies the allegations in this paragraph to the extent they are inconsistent with the Staff Report.**

39.     The Board held its public hearing on May 26, 2022, at which it intended to make a final determination on whether to accept the Bureau's recommendation.

**RESPONSE: Admitted.**

40.     At the May 26, 2022, Board public hearing, Bureau Director Jonathan Brater admitted that the Bureau recommended invalidating Mr. Johnson's signatures without checking them against the QVF.

**RESPONSE: Intervenor states that the remarks made during the May 26, 2022, hearing speak for themselves, and denies the allegations in this paragraph to the extent they are inconsistent with those remarks.**

41.     And, Director Brater further admitted that Bureau of Elections staff only compared 7,000 of the 68,000 signatures on nominating petitions submitted across all 10 of gubernatorial candidates because according to him, it was "impractical" to compare every signature against the QVF as required by law.

**RESPONSE: Intervenor states that the remarks made during the May 26, 2022, hearing speak for themselves, and denies the allegations in this paragraph to the extent they are inconsistent with those remarks.**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

42.     Additionally, neither the Bureau of Elections, nor the Board has ever identified which signatures Mr. Johnson submitted on his nominating petitions were invalid as compared to the QVF, if any at all.

**RESPONSE: Denied as untrue.**

43.     And because the Bureau hasn't checked all of Mr. Johnson's 6,983 alleged fraudulent signatures against the QVF as required by law, and Mr. Johnson doesn't have access to the QVF, no one knows how many of his disqualified signatures are actually invalid.

**RESPONSE: Denied as untrue.**

44.     The Board ultimately deadlocked 2-2 along partisan lines and failed to declare the sufficiency of his complaint.

**RESPONSE: Admitted.**

45.     And, upon information and belief, the Secretary of State has not, and will not, certify Mr. Johnson's name as a Republican candidate for the Office of Governor on the August 2, 2022, primary ballot.

**RESPONSE: Admitted.**

46.     Despite having a clear legal duty not to do so, the Board invalidated entire petition sheets based on alleged forgeries, in direct violation of M.C.L. 168.554c(6)'s mandate that "The invalidity of 1 or more signatures on a petition does

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

not affect the validity of the remainder of the signatures on the petition," as well as binding judicial precedent.

**RESPONSE: Intervenor admits that the Bureau invalidated all nominating petitions signed by the fraudulent petition circulators. Intervenor denies the remaining allegations in this paragraph as untrue.**

47.     There was no indication that the staff of the Secretary compared any of the signatures on Mr. Johnson's petitions to the QVF before or after applying some unspecified eyeball test to make a determination – and public allegations – of "fraud." To date, there is no indication that the Secretary contacted any individuals who circulated these petitions, no indication that the Secretary contacted any individuals whose information appears on the face of the petitions, or any of the other hallmarks of a traditional government fraud investigation. And, there have been no criminal or civil charges yet brought against any of the individuals who circulated the allegedly fraudulent petitions.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

48.     The Board further violated Mr. Johnson's right to due process guaranteed under both the United States and Michigan Constitutions by denying him notice of the basis for its determination that signatures on his petitions were invalid, and a meaningful opportunity to respond to its allegations of invalidity, fraud, and forgery.

**RESPONSE: Denied as untrue.**

49.     Although it claims that 9,393 signatures on his petitions are invalid, the Bureau has never given Mr. Johnson an itemized list of each of those signatures. Nor has the Bureau given him any explanation for its invalidation other than a general disqualification of each signature gathered by 18 circulators for various and sundry "indicators" of fraud. Instead, the Bureau has only specifically identified 78 of his signatures that may be invalid for jurisdictional reasons or because they are of dubious authenticity. No specific signatures on any petition sheet has yet been identified as forged and presented to Mr. Johnson by the Secretary in compliance with Michigan law.

**RESPONSE: Denied as untrue.**

50.     Because the Board violated its clear legal duties by applying the wrong standard, violating the law, acting contrary to binding judicial precedent, ignoring the Secretary's guidance, and violating Mr. Johnson's constitutional rights, it failed to meet its burden of establishing that he had less than 15,000 valid signatures on his nominating petitions.

**RESPONSE: Denied as untrue.**

51.     On information and belief, the Secretary will not certify Mr. Johnson's name as a Republican candidate for the Office of Governor of Michigan for the reasons stated above.

**RESPONSE: Intervenor admits only that the Secretary will not certify Mr. Johnson's name as a Republican candidate for the Office of Governor of Michigan and denies the remaining allegations in this paragraph as untrue.**

52.     Ballots for the August 2, 2022, primary must be sent to uniformed personnel and absentee voters on June 18, 2022. Before then, the primary ballots need to be printed and proofed.

**RESPONSE: Admitted.**

53.     Given these extreme time constraints a temporary restraining order enjoining the Secretary from proceeding with certifying names for the August 2, 2022, Republican primary ballot without notice to Defendants is proper here because it is the only possible avenue for Mr. Johnson's name to appear on the August 2, 2022, primary ballot. Thus, Mr. Johnson has no other adequate equitable remedy aside from a temporary restraining order.

**RESPONSE: Denied as untrue.**

54.     And because the Secretary, on information and belief, will not certify Mr. Johnson for the reasons stated above, a temporary restraining order enjoining the Secretary from immediately finalizing the August 2, 2022, Republican primary ballot is proper here because Mr. Johnson has at least 15,000 valid signatures, thus he is likely to succeed on the merits of his claims, and will he suffer immediate and irreparable harm if the Secretary leaves his name off the August 2, 2022, Republican primary ballot.

**RESPONSE: Denied as untrue.**

55.     Additionally, Mr. Johnson can show that because he obtained at least 15,000 valid nominating petition signatures, the balance of equity tips in his favor, so it is in the public interest for his name to be included on the August 2, 2022 Republican primary ballot.

**RESPONSE: Denied as untrue.**

<u>COUNT I-VIOLATION OF FIRST AND<br>FOURTEENTH AMENDMENT RIGHTS</u>
**(M.C.L. §§ 168.53; 168.544(f) are unconstitutional as applied to<br>Mr. Johnson as a candidate)**

56.     Plaintiff incorporates by reference all previous allegations of this Complaint as if fully set forth herein.

**RESPONSE: Intervenor incorporates her answers and denials to paragraphs 1-55 of this Complaint as if fully restated herein.**

57.     In light of the alleged unprecedented fraud and the Bureau's unprecedented, unlawful, and after-the-fact deviation in processing the nominating petition signatures in response to that fraud, Defendants' enforcement of M.C.L. §§ 168.53 and 168.544(f) is unconstitutional as applied to Mr. Johnson because Defendants' enforcement of those statutes in combination with the Bureau's new Procedures imposes a severe burden on Mr. Johnson, making it impossible for him to satisfy the statutes' signature requirements to appear on the primary election ballot.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

**RESPONSE: This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph as untrue.**

58.     The Bureau's hasty implementation of the new canvassing Procedures, which significantly decrease the threshold for invalidating signatures and rely on arbitrary and wholly speculative indicia of fraud to invalidate signatures, impose a severe burden on candidates, like Mr. Johnson.

**RESPONSE: Denied as untrue.**

59.     That burden is exacerbated by the fact that Defendants failed to notify the candidates of the new Procedures, and implemented those Procedures after it was too late for Mr. Johnson to compensate for them and submit additional signatures to increase his "cushion."

**RESPONSE: Denied as untrue.**

60.     Thus, when these factors are viewed in combination, including the alleged unprecedented fraud that occurred, Defendants' enforcement of statutory signature requirements severely burdens Mr. Johnson.

**RESPONSE: Denied as untrue.**

61.     Mr. Johnson will suffer immediate and irreparable harm because Defendants' unconstitutional enforcement of the statutory signature requirements under the circumstances makes it impossible for him to get his name on the August 2, 2022, Republican primary ballot.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

**RESPONSE: Denied as untrue.**

62.     Under these circumstances, Defendants' application and enforcement of the signature requirements of M.C.L. sections 168.53 and 168.544(f) are burdensome, unreasonable, and are not narrowly tailored to meet any compelling state interest.

**RESPONSE: Denied as untrue.**

63.     Therefore, Defendants' continued enforcement of M.C.L. sections 168.53 and 168.544(f) against Mr. Johnson will continue to injure him in the immediate future in the absence of relief from this court.

**RESPONSE: Denied as untrue.**

<u>**COUNT II-VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS**</u>

64.     Plaintiff incorporates by reference all previous allegations of this Complaint as if fully set forth herein.

**RESPONSE: Intervenor incorporates her answers and denials to paragraphs 1-63 of this Complaint as if fully restated herein.**

65.     Mr. Johnson has a fundamental right to seek public office and he cannot be deprived of that right without due process of law.

**RESPONSE: Denied as untrue.**

66.     Defendants are unlawfully denying Mr. Johnson access to the ballot without providing him with an opportunity to be heard in a meaningful manner.

**RESPONSE: Denied as untrue.  _Kowall v Benson_, 18 F.4th 542, 549 (6th Cir. 2021) ("Just as candidates have no fundamental right to run for office, voters**

**have no fundamental right to 'vote for a specific candidate or even a particular class of candidates.'").**

67.     Defendants invalidated 9,393 signatures that Mr. Johnson filed with the Bureau of Elections. Of those, 5,580 were invalidated without the Bureau having first reviewed them. In addition, the Bureau invalidated an additional 2,410 signatures with little to no explanation.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

68.     The Bureau would not provide Johnson with an itemized list of the 2,332 (out of a total of 23,193) signatures that were invalidated, leaving him left to guess.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

69.     Thus, without knowing which signatures the BOE was invalidating, Johnson was forced to comb through nearly all 23,193 signatures and then guess as to which of those comprised the 2,332 signatures the BOE invalidated.

**RESPONSE: Intervenor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies them as untrue.**

70.     The only way in which Mr. Johnson could reasonably ensure that his arguments regarding the 2,332 invalidated signatures were heard in a meaningful manner (or at all), was to make arguments that all 23,193 signatures should be deemed valid.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

**RESPONSE: Denied as untrue.**

71.    That is an insurmountable task with even an unlimited amount of time to prepare. Here, however, Mr. Johnson had three days to prepare.

**RESPONSE: Denied as untrue.**

72.    Thus, in addition to withholding from Mr. Johnson the information necessary for him to prepare his case, the time constraints imposed upon him were wholly unreasonable given the magnitude of the task.

**RESPONSE: Denied as untrue.**

73.    Both the withholding of vital information and the time constraints effectively robbed Mr. Johnson of any opportunity to be heard in a meaningful manner. That is not due process.

**RESPONSE: Denied as untrue.**

74.    Defendants should be enjoined from preventing the placement of Mr. Johnson's name on the ballot until or unless Mr. Johnson has had a meaningful opportunity to be heard. Anything less would deprive Mr. Johnson of his fundamental rights without due process of law.

**RESPONSE: Denied as untrue.**

WHEREFORE, Intervenor respectfully requests that this Court deny Plaintiff's Motion for Temporary Restraining Order and dismiss Plaintiff's Complaint with prejudice.

## __AFFIRMATIVE DEFENSES__

Without assuming the burden of proof where it otherwise rests with Plaintiff, Bray pleads the following defenses to the Complaint:

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    Plaintiff's claims are barred by the doctrine of res judicata.

3.    Plaintiff's claims are barred by the doctrine of laches and/or the *Purcell* principle.

4.    Due to the fraudulent signatures submitted by Plaintiff's campaign, Plaintiff's claims are barred by the doctrine of unclean hands.

5.    Plaintiff submitted an insufficient amount of valid, non-fraudulent signatures.

6.    Defendants lack a clear legal duty entitling Plaintiff to the relief he requests.

7.    Candidates who submit fraudulent signatures have no clear legal right to appear on the ballot.

8.    The relief Plaintiff seeks is not ministerial in nature.

9.    Plaintiff has an adequate remedy at law.

10.    Plaintiff lacks a due process right to seek public office.

11.    Plaintiff was provided with adequate procedural protections to dispute the fraud.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## **RESERVATION OF RIGHTS**

Bray reserves the right to amend her Answer and Affirmative Defenses as

necessary.

Respectfully submitted,

Dated:  June 10, 2022

By: */s/ Gary P. Gordon*
Steven C. Liedel* (P58852)
*(*admission pending)*
Gary P. Gordon (P26290)
Kyle M. Asher (P80359)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
(517) 374-9184
sliedel@dykema.com
ggordon@dykema.com

*Attorneys for Proposed Intervenor
Carol Bray*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

I, Gary P. Gordon, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

Dated:  June 10, 2022

By: */s/ Gary P. Gordon*
Steven C. Liedel* (P58852)
*(*admission pending)*
Gary P. Gordon (P26290)
Kyle M. Asher (P80359)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
(517) 374-9184
sliedel@dykema.com

*Attorneys for Proposed Intervenor*
*Carol Bray*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Gary P. Gordon*
   *Attorney for Defendants*

4865-9394-8708.3

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933