## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

PERRY JOHNSON,

       Plaintiff,

v.

MICHIGAN BOARD OF STATE
CANVASSERS; JOCELYN BENSON
in her official capacity as Secretary of
State; and JONATHAN BRATER, in
his official capacity as Director of the
Michigan Bureau of Elections,

       Defendants.

Case No. 2:22-cv-11232-MAG-JJCG

Hon. Mark A. Goldsmith

Magistrate Judge Jonathan J.C. Grey

---

## NOTICE OF SUPPLEMENTAL AUTHORITY

Proposed Intervenor Carol Bray submits this Notice of Supplemental Authority and, in support, states as follows:

1.  On June 10, Bray submitted a motion to intervene and, along with it, a proposed response to Plaintiff Perry Johnson's Motion for Temporary Restraining Order.  (ECF No. 17.)

2.  The proposed response argued, as relevant, that this Court should "not alter the election rules on the eve of an election" and that Johnson's June 6, 2022 pleadings in this case came too late.  (*Id.* at 12-14, PageID.885-888.)

3.  The same day Bray filed her proposed response, the Sixth Circuit addressed a motion for preliminary injunction filed by Monica Conyers, who

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

appealed the district court's rejection of her attempt to be placed on the ballot for Wayne County Executive. *Conyers v. Garrett*, No. 22-1494 (6th Cir. June 10, 2022) (**Ex. 1**).

4.      Before reaching the merits, the Court explained that "Conyers may have waited too long to sue." (*Id.* at 2.)  The election officials were "set to begin printing ballots for the August 2 primary any day now" and "courts generally decline to 'disrupt imminent elections absent a powerful reason for doing so.'" (*Id.* (citation omitted).)  "[E]ven after the clerk refused to place her name on the ballot, Conyers waited another two weeks to seek an injunction—only coming to court days before the County's deadline to start printing ballots." (*Id.* at 3.)  "This timeline has important ramifications: It complicated the County's preparations, kept the defendants from thoroughly briefing the matter, and deprived the district court and this court of the opportunity to 'resolve the merits of this dispute long before the election.'" (*Id.*)  "As a result, the delay very likely hindered the defendants' ability to fairly litigate this case and conduct an orderly election.  So it's doubtful that Conyers would be entitled to a preliminary injunction regardless of the merits of her claim." (*Id.*)

5.      Proposed Intervenor respectfully submits that this analysis of Conyers' complaint—which was filed in federal court 11 days before Johnson filed his complaint in federal court—is relevant to the issues in this case.  While Conyers

initiated her action in federal court before the June 3rd deadline for the Secretary of

State to certify the list of candidates for the August 2nd primary election, Johnson

did not, waiting until June 6th to initiate this case.

Dated:  June 13, 2022                              Respectfully submitted

                                                   s/ *Kyle M. Asher*
                                                   Steven C. Liedel* (P58852)
                                                    *(*admission pending)*
                                                   Gary P. Gordon (P26290)
                                                   Kyle M. Asher (P80359)
                                                   DYKEMA GOSSETT PLLC
                                                   201 Townsend Street, Suite 900
                                                   Lansing, MI 48933
                                                   (517) 374-9184
                                                   sliedel@dykema.com
                                                   ggordon@dykema.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

I, Kyle M. Asher, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 (for proportional fonts).  I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

By: /s/ *Kyle M. Asher*
*Attorney for Defendants*

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Kyle M. Asher*
         *Attorney for Defendants*

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

900500.005797  4887-4337-0276.1

# EXHIBIT 1

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0233n.06

Case No. 22-1494

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MONICA A. CONYERS, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| CATHY M. GARRETT, et al., | ) | |
| Defendants-Appellees. | ) | |
| | ) | OPINION |

> **FILED**
> Jun 10, 2022
> DEBORAH S. HUNT, Clerk

Before: BOGGS, SILER, and THAPAR, Circuit Judges.

PER CURIAM. In 2010, Michigan amended its constitution to prevent individuals with certain convictions from holding elected office. Monica Conyers—who was convicted of bribery in 2009 for actions she took while serving on Detroit's city council—wants to run for Wayne County Executive in this year's election. She argues that the amendment is an unconstitutional ex post facto law as applied to her because it went into effect after her conviction. We disagree.

I.

Monica Conyers joined Detroit's city council in 2005. She filled that role until 2009, when she was convicted for accepting a bribe. A judge then sentenced Conyers to thirty-seven months in prison. She was ultimately released from prison in 2012.

Now, more than ten years after her conviction, Conyers wants to run for Wayne County Executive. The problem? The clerk for Wayne County concluded that because of her conviction, Conyers is unqualified to be on the ballot under a 2010 amendment (Section 8) to Michigan's

Case No. 22-1494, *Conyers v. Garrett*

constitution.  That amendment states:  "A person is ineligible for election or appointment to any state or local elective office of this state . . . if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government."  Mich. Const. art. XI, § 8, cl. 1.

With a matter of days before the ballots were to be printed, Conyers sued the county clerk in federal district court.  The Michigan Attorney General later intervened to defend Section 8.  Conyers moved for a preliminary injunction enjoining the clerk "from denying Monica Conyers the right to have her name appear on the ballot as a candidate for Wayne County Executive."  R. 3, Pg. ID 120.  Among other things, Conyers argued that Section 8 is an unconstitutional ex post facto law as applied to her because she was convicted and sentenced for her crime before the amendment went into effect.[1]  The district court disagreed, concluding that Section 8 does not violate the U.S. Constitution's prohibition on ex post facto laws.  So it denied her motion for a preliminary injunction.  Conyers then appealed the denial of her motion and moved for an injunction pending appeal.[2]

## II.

To begin with, Conyers may have waited too long to sue.  After all, the Wayne County Board of Elections is set to begin printing ballots for the August 2 primary any day now.  And courts generally decline to "disrupt imminent elections absent a powerful reason for doing so."

---

[1] Conyers raised several other issues before the district court.  But she doesn't press those issues on appeal, so she's forfeited them.  *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

[2] Because the parties have sufficiently briefed the issue, we address the preliminary-injunction appeal here.  *Cf. Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 923 (6th Cir. 2020), *vacated as moot*, 141 S. Ct. 1262 (2021).

Case No. 22-1494, *Conyers v. Garrett*

*Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016); *cf. Serv. Emps. Int'l Union Loc. 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) (per curiam) ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored."). Yet Conyers hasn't identified any powerful reason here. Instead, the record suggests that Conyers "unreasonably delayed" her suit. *Crookston*, 841 F.3d at 398. She waited over a decade to challenge Section 8. And even after the clerk refused to place her name on the ballot, Conyers waited another two weeks to seek an injunction—only coming to court days before the County's deadline to start printing ballots. This timeline has important ramifications: It complicated the County's preparations, kept the defendants from thoroughly briefing the matter, and deprived the district court and this court of the opportunity to "resolve the merits of the dispute long before the election." *Id.* at 399. As a result, the delay very likely hindered the defendants' ability to fairly litigate this case and conduct an orderly election. So it's doubtful that Conyers would be entitled to a preliminary injunction regardless of the merits of her claim.

But even setting that aside, the district court didn't abuse its discretion by denying Conyers's motion for a preliminary injunction. *See Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). To receive a preliminary injunction, Conyers must show that (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm without such an injunction; (3) the balance of the equities is in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). So long as Conyers shows "some likelihood of success on the merits," the preliminary-injunction factors must "be balanced, rather than tallied." *Hall*, 878 F.3d at 527.

*Likelihood of Success on the Merits*. The U.S. Constitution forbids states from passing ex post facto laws—laws that retroactively "increase the punishment for criminal acts." *Collins v.*

Case No. 22-1494, *Conyers v. Garrett*

*Youngblood*, 497 U.S. 37, 43 (1990); *see* U.S. Const. art. I, § 10, cl. 1.  We know that Section 8

went into effect after Conyers was sentenced and that it is being retroactively applied to her.  So

our task is to determine whether Section 8 imposes a punishment.  *Smith v. Doe*, 538 U.S. 84, 92

(2003).  To do so, the Supreme Court tells us to apply a two-step test.  At the first step, we ask if

the State intended to impose a punishment.  If so, applying it retroactively is unconstitutional.  *Id.*

But if Section 8 was instead meant to be a "civil and nonpunitive" regulation, we move to the

second step and assess whether the amendment is "so punitive either in purpose or effect as to

negate" its intended effect.  *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)).  As we

make this assessment, we generally defer to the stated intent.  In other words, we presume a law

that satisfies step one is nonpunitive, and "only the clearest proof" otherwise can overcome that

presumption.  *Hudson v. United States*, 522 U.S. 93, 100 (1997) (citation omitted).

Start with step one.  Was Section 8 intended as a punishment or a nonpunitive civil

measure?  This question requires us to consider the amendment's text and its structure to determine

whether the State "indicated either expressly or impliedly" that Section 8 is a punitive or

nonpunitive measure.  *Id.* at 99 (citation omitted); *see also Smith*, 538 U.S. at 93.

Here, the State intended Section 8 to be a nonpunitive civil measure.  To begin, the

amendment doesn't specify that it's a punishment.  *Smith*, 538 U.S. at 93.  Instead, it establishes

qualifications for holding certain offices in Michigan—something states routinely do.  Those

qualifications seek to improve the quality of political representation and to protect the public by

ensuring that the State only places its trust in those who have "not already betrayed" it.  R. 24,

Pg. ID 291.  The text of the amendment confirms this intent; it explains that the amendment's

qualifications apply "in addition to any other qualification required under this constitution or by

law."  Mich. Const. art. XI, § 8, cl. 2.  Thus, nothing on the face of Section 8 suggests that the

Case No. 22-1494, *Conyers v. Garrett*

State "sought to create anything other than a civil scheme designed to protect the public from harm." *Smith*, 538 U.S. at 93 (cleaned up).

Nor does the context or structure suggest that Section 8 is punitive. *Id.* at 93–94. The provision isn't part of Michigan's criminal code; it's an amendment to the State's constitution. *See Simmons v. Galvin*, 575 F.3d 24, 44 (1st Cir. 2009) (finding a provision nonpunitive in part because it's "not in the Commonwealth's criminal code, but rather its civil constitutional and statutory voter qualification provisions"). And within the Michigan Constitution, Section 8 is in an article that governs public officers and employees—not one related to criminal procedure or penalties. *See* Mich. Const. art. XI; *Smith*, 538 U.S. at 94 (labeling provisions nonpunitive in part because they were "codified in the State's 'Health, Safety, and Housing Code'"); *Hendricks*, 521 U.S. at 361 (similar). Given these textual and contextual clues, we conclude that the State intended Section 8 to be a nonpunitive civil measure—specifically, a nonpunitive qualification for office.[3]

Because Section 8 was intended to be a nonpunitive civil measure, we move to step two. Here, we must assess whether the measure is in practice so punitive that we must treat it as a punishment regardless of the State's intent. *Smith*, 538 U.S. at 92. Under this step, we consider a host of factors that are neither dispositive nor exhaustive. They include whether the restriction "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive

---

[3] Conyers points to evidence that her bribery conviction, along with a former Detroit mayor's conviction, was the reason Michigan enacted Section 8. She complains that the district court "refused to consider this information" because she failed to submit it before the hearing. Appellant Br. 11. But even assuming this evidence is relevant, *see Simmons*, 575 F.3d at 45, it doesn't help Conyers. Although her offense may have revealed the need for an amendment like Section 8, that alone doesn't transform an otherwise generally applicable constitutional amendment about qualifications for public office into a punishment.

- 5 -

Case No. 22-1494, *Conyers v. Garrett*

purpose; or is excessive with respect to this purpose." *Id.* at 97; *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).

Start with the first factor. The State concedes that "disqualification for public office" has historically been imposed as a criminal penalty. Att'y Gen. Br. 22 (citing *Cummings v. Missouri*, 71 U.S. 277, 311 (1866)). Yet this is just one factor among many.

Unlike the first factor, the second factor weighs against Conyers. Section 8 doesn't impose an "affirmative disability or restraint" on Conyers. Consider the Supreme Court's decision in *Hudson*. There, several banking executives and board members were permanently barred from "participating in the banking industry." 522 U.S. at 104. The Court found this ban was not an "affirmative disability or restraint." Why? Because the ban didn't resemble the paradigmatic punishment of imprisonment. *Id.*; *see Sanders v. Allison Engine Co.*, 703 F.3d 930, 945 (6th Cir. 2012).

The same logic applies here. A temporary bar from holding elected office in Michigan isn't a "sanction approaching the infamous punishment of imprisonment." *Sanders*, 703 F.3d at 945 (citation omitted). What's more, because Section 8's restriction lasts only twenty years after a conviction, it's less harsh than the *permanent* occupational restrictions the Supreme Court has repeatedly blessed. *See, e.g.*, *Hudson*, 522 U.S. at 104 (debarment from banking industry); *De Veau v. Braisted*, 363 U.S. 144, 157–60 (1960) (plurality opinion) (prohibition on work as union official); *Hawker v. New York*, 170 U.S. 189, 190 (1898) (revocation of medical license). So Section 8 doesn't impose an "affirmative disability or restraint" on Conyers. This factor weighs against her.

The third factor doesn't help Conyers much either. True, Section 8 has some deterrent effects. But as we've explained, deterrence "may serve both civil and criminal goals, and the mere

- 6 -

Case No. 22-1494, *Conyers v. Garrett*

presence of a deterrent purpose is not enough to render sanctions criminal." *Sanders*, 703 F.3d at 946; *see Cutshall v. Sundquist*, 193 F.3d 466, 473 (6th Cir. 1999) ("all civil penalties serve as a deterrent"). Of course, Conyers also argues that Section 8 serves a retributive goal because it imposes restrictions "solely based on prior offenses" and without "individualized determinations." Appellant Br. 15. But a state may make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. And the State's decision to target a class of offenders "rather than require individual determination of their dangerousness, does not make [Section 8] a punishment under the *Ex Post Facto* Clause." *Id.* at 104. Thus, even if this factor supports Conyers, it doesn't weigh strongly in her favor.

Next, the fourth factor. Section 8 plainly has a "rational connection to a nonpunitive purpose." *Id.* at 97. As the district court pointed out, Section 8 "ensure[s] that, for certain elected and appointed officers, the State only placed its trust in those who had not already betrayed that trust." R. 24, Pg. ID 291. In the Michigan Attorney General's words, Section 8 protects "citizens from corrupt or dishonest officials holding office." Att'y Gen. Br. 19. And the State's determinations about who may hold office are a fundamental exercise of state sovereignty. *See Kowall v. Benson*, 18 F.4th 542, 548 (6th Cir. 2021). The State's judgment that a prohibition like this one is necessary to protect the public is no doubt rational. *Cf. Simmons*, 575 F.3d at 45.

Finally, the fifth factor. Conyers argues that the amendment is excessive as applied to her because (1) the judge in her sentencing hearing stated that she is unlikely to reoffend and (2) another Michigan official convicted of bribery "never reoffended again." Appellant Br. 18. But Conyers's evidence is thin and anecdotal; it provides no basis to disregard the State's judgment that the public needs protection from felons who abused their position of public trust. And as we explained above, the State may make "reasonable categorical judgments" like this when deciding

Case No. 22-1494, *Conyers v. Garrett*

that some convictions "should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. Indeed, the State's decision to dispense with an "individual determination" of each person's dangerousness and instead target classes of offenders does not render Section 8 an unconstitutional ex post facto law. *Id.* at 104.

On top of that, Section 8 is narrowly tailored to achieve its nonpunitive, protective goal. For starters, Section 8 applies only to those who have convictions for a small group of felonies— those "involving dishonesty, deceit, fraud, or a breach of the public trust." Mich. Const. art. XI, § 8, cl. 1. Moreover, those convictions must have "related to the person's official capacity while the person was holding" certain government positions. *Id.* And Section 8's restriction is limited in other ways as well. Unlike a permanent occupational debarment, the restriction is temporary— it expires after twenty years. Additionally, it only prevents the person from serving in select roles, including "state or local elective office" and positions that otherwise have "policy-making" or "discretionary authority over public assets." *Id.*[4]

In the end, we're left with a mixed bag. Some factors are neutral or weigh in her favor. But the rest weigh against her. And because only the "clearest proof" can override Section 8's intended purpose, Conyers's evidence fails to carry her burden. *Sanders*, 703 F.3d at 948 (citation omitted). So she hasn't established any likelihood of success on her claim.

*Other Preliminary-Injunction Factors*. Because Conyers hasn't shown any likelihood of success on her claim, she can't establish that she is likely to suffer an irreparable injury absent a preliminary injunction. *See Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020). Nor can she

---

[4] The caselaw often discusses two other factors—whether the "the regulation comes into play only on a finding of scienter" and whether it applies to behavior that is already a crime. *Smith*, 538 U.S. at 105. But as in *Smith*, Section 8 applies "only to past conduct," so these factors are "of little weight in this case." *Id.* Moreover, to the extent Section 8 applies to present conduct—e.g., holding elected office while disqualified—its restriction operates "without inquiry into the offender's state of mind." *Cutshall*, 193 F.3d at 475. And the mere fact that Section 8 is "tied to criminal activity" is not alone sufficient to render it punitive. *United States v. Ursery*, 518 U.S. 267, 292 (1996).

Case No. 22-1494, *Conyers v. Garrett*

show that the other preliminary-injunction factors weigh in her favor.  *Id.*  Thus, Conyers is not entitled to a preliminary injunction.

*       *       *

We affirm the district court's order denying Conyers's motion for a preliminary injunction and deny as moot her motion for an injunction pending appeal of the district court's order, which we have now decided.